Richmond

COMMONWEALTH OF VIRGINIA, EX REL HENRY G. GILMER,
COMPTROLLER V. R. R. SMITH, AN INDIVIDUAL TRADING
AS SMITH TRANSFER COMPANY, AND SMITH
TRANSFER CORPORATION.

December 3, 1951.

Record No. 3814.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General,* and *D. Gardiner Tyler, Jr., Assistant Attorney General,* for the plaintiff in error.

*S. W. Shelton, Charles W. Crowder* and *E. Neil Rogers,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

In March, 1949, the Commonwealth of Virginia, at the relation of the State Comptroller, filed her notice of motion for judgment against R. R. Smith, trading as Smith Transfer Company, to recover the balance alleged to be due by him under section 35-aa of the Motor Vehicle Code[1] for taxes or registration fees on certain trailers owned or operated by him for the period from April 1, 1948, to March 31, 1949. By amendment Smith Transfer Corporation was made a party defendant.

A demurrer to the amended notice of motion was overruled and after issue had been joined there was trial by a jury which resulted in verdict and judgment for the defendants. To review the judgment and proceedings below we granted the Commonwealth a writ of error.

The defendants offered no evidence and the main assignment of error is that the lower court erred in not setting aside the verdict and entering judgment for the Commonwealth for the amount of the tax claimed upon the evidence submitted by her.

---

[1] Acts 1946, ch. 196, p. 332; Code 1950, §§ 46-171, 46-172.

The reply of, the defendants in error to this contention is that the Commonwealth's evidence fails to establish any legal liability on either of them for the taxes sought to be recovered.

In the early part of 1948, Smith was engaged in the business of a motor vehicle contract carrier of property, with headquarters at Staunton, Virginia, and for the purpose operated from sixty to eighty large trailers. The business was incorporated under the name of Smith Transfer Corporation in November, 1948.

In April, 1948, these vehicles were duly registered with the Division of Motor Vehicles, the required fees for operating them for the ensuing twelve months were paid, and the necessary license plates obtained. Under the statutes then in effect[2] the permitted gross weight of such vehicles, including the cargo, was limited to 40,000 pounds, and the registration fees were paid on this basis.

At its 1948 session the General Assembly amended section 113-a of the Motor Vehicle Code to permit the operation over certain roads in this State of vehicles, or a combination thereof, and their cargoes at a gross maximum weight of 50,000 pounds, provided such vehicles were equipped with a specified number of axles, wheels, etc.[3] In a companion statute, passed at the same session, section 35-aa, *supra,* of the Motor Vehicle Code was repealed, effective March 15, 1949. This latter act further provided that, "All vehicles heretofore required to be licensed under the provisions of section 35-aa shall be licensed under and pay the fees required by section 35-a" of the Motor Vehicle Code.[4] Section 35-a of the Motor Vehicle Code was likewise amended to prescribe a new schedule of fees for such registration.[5]

In the latter part of September, 1948, Smith applied to the Division for the registration of his vehicles for the remainder of the license period, that is, from October 1, 1948, to March 31, 1949, in order that they might be operated with the permitted maximum weight of 50,000 pounds. He said to the department representative that he had converted, or would shortly convert,

[2] Sections 35-aa, *supra,* and 113-a of the Motor Vehicle Code; Acts 1942, ch. 377, p. 592; Michie's Code 1942, § 2154(160-a).
[3] Acts 1948, ch. 510, p. 1020; Code 1950, § 46-336.
[4] Acts 1948, ch. 550, p. 1122.
[5] Acts 1948, ch. 492, p. 986; Code 1950, § 46-162.

his vehicles to conform to the statutory requirements for the greater weight, and offered to pay the difference between the registration fees which he had paid in April, 1948, for the privilege of operating such vehicles at a gross weight of 40,000 pounds and those required for the operation at a gross weight of 50,000 pounds. Smith was told that if he would execute an affidavit that none of his vehicles had been operated at a gross weight in excess of 40,000 pounds since June 29, 1948, the effective date of the amendment permitting the operation at the greater weight, the necessary registration would be permitted for the remainder of the registration year. He declined to execute the affidavit and the change in the registration of the vehicles was not effected.

On November 9, 1948, Smith filed in the Circuit Court of the city of Richmond a suit for a declaratory judgment against the Commissioner of the Division of Motor Vehicles asking for an interpretation of the applicable statutes. That proceeding resulted in a decree to the effect that since the amendment permitting the operation of vehicles at an increased weight became effective on June 29, 1948, and was operative for three-fourths of the current registration period, Smith's liability to the Commonwealth for the registration fees, at the authorized increased weight for each vehicle, would be "three-fourths of the annual fee provided for in section 35-aa," *supra,* and not one-half of such annual fee, as claimed by him, under section 35-b,[6] as amended, of the Motor Vehicle Code. Smith sought a review of this decree and an appeal was denied him in June, 1949. (189 Va. lxxiii.)

After Smith had failed to register his vehicles, obtain the necessary authority to operate at the greater weight, and pay the required fees, the present suit was instituted.

To avoid the inconvenience of producing Smith's records in court, by stipulation of counsel an auditor of the Motor Vehicle Department was permitted to examine such records and testify as to their contents. The auditor's report showed that on certain dates from June 30 to September 2, 1948, sixty-seven of Smith's vehicles, consisting in each instance of a trailer and tractor operating as a contract carrier of property, had transported over the roads of this State cargo which taken in connection with the weight of the vehicles exceeded 50,000 pounds.

[6] Acts 1948, ch. 550, p. 1120; Code 1950, § 46-176.

Another combination of such vehicles had been operated as a common carrier on July 20th of that year at a gross weight of more than 49,000 pounds.

There was no evidence adduced before the jury that any of these vehicles, at the time of their operation, were of such type of construction as could have been licensed to operate at a gross weight in excess of 40,000 pounds under the provisions of section 113-a of the Motor Vehicle Code, as amended by Acts 1948, *supra*.

The registration fee required under section 35-aa, *supra*, for a tractor and trailer to be operated as a contract carrier at a gross weight of 50,000 pounds, is $450. Since Smith had paid $270 as the registration fee, based on a gross weight of 40,000 pounds, for the period from April 1, 1948, to March 31, 1949, the Commonwealth claimed that he should pay for the alleged illegal operation of each of these vehicles in June, July, August and September, 1948, the balance of the registration fee required of vehicles permitted to be operated at the greater weight for the period from June 29, 1948, to March 31, 1949—that is, three-fourths of the difference between $450 and $270, or $135 on each combination of tractor and trailer. For the trailer used as a common carrier the Commonwealth claimed a balance due of $225. The evidence on behalf of the Commonwealth is that the total balance due for such registration fees on these vehicles, calculated on this basis, amounts to $8,721.19.

The Commonwealth contends that under sections 12[7] and 35-aa, *supra*, of the Motor Vehicle Code, it is the duty of the owner and operator of a motor vehicle or trailer to be used as a common carrier, to apply to the Division for the registration thereof and pay the prescribed fee before operating it upon the highways of this State; that by operating such a vehicle upon the highways on a single occasion without paying the required fee the owner or operator becomes personally liable therefor, and that such liability may be enforced by the Commonwealth in an action at law.

We agree that the Commonwealth may enforce in an action at law the collection of taxes for which a taxpayer is personally liable. Section 403 of the Tax Code, as amended by Acts 1946, ch. 58, p. 82 (now Code of 1950, § 58-1014), so provides. See also, *Banks* v. *County of Norfolk*, 191 Va. 463, 62 S. E. (2d) 46.

[7] Acts 1932, ch. 342, p. 620; Code 1950, § 46-42.

But the question here is whether the statutes with which we are concerned impose a liability upon the owner or operator of the carrier vehicles for the taxes which the State seeks to collect.

The lower court held and in effect instructed the jury that unless the vehicles which the Commonwealth's evidence showed had been operated in excess of the gross weight of 40,000 pounds were of such type as could have been licensed to so operate, there was no liability upon the defendant, Smith, for the registration fees sought to be collected. Since there was no such evidence, under that ruling there could have been no verdict and judgment in favor of the Commonwealth.

We are of opinion that the ruling of the lower court was correct. In effect, the claim of the Commonwealth is that the statute imposed upon the defendant, Smith, a penalty for operating his vehicles in excess of the gross weight for which they were licensed, measured by the difference between the registration fees he had paid and those he should have paid had his vehicles been licensed at the greater weight. We find in the pertinent statutes no basis for this contention.

A registration fee is imposed upon the owner of a motor vehicle for the privilege of operating it over the highways of the State. As evidence that such privilege has been granted to him, he is furnished by the Division with a registration card to be carried by the operator of the vehicle,[8] and a license plate or plates which must be attached to and displayed on the vehicle "during the current registration year."[9]

If the vehicle is not of the type to which the General Assembly has granted the privilege of operating on the roads of the Commonwealth at a prescribed weight, it may not be licensed to so operate. There is no provision in the statutes for the imposition or collection of a registration fee based upon a weight at which the vehicle may not be licensed to operate.

We are not unmindful of the principle invoked by the Commonwealth that the government has the right to impose a license tax on an illegal business or operation, and that the imposition of such tax is no justification for the continuance of such business or operation. 53 C. J. S., Licenses, § 28, p. 557, and cases

---

[8] Motor Vehicle Code, § 19; Acts 1932, ch. 342, p. 624; Code 1950, § 46-80.

[9] Motor Vehicle Code, §§ 20, 21, as amended; Acts 1942, ch. 365, pp. 552-3; Code 1950, §§ 46-96, 46-101.

there cited. Our concern is not whether the State has the power to impose the tax here sought to be recovered by way of a penalty, but whether such power has been exercised.

Other penalties are provided in the statutes for the operation of vehicles in excess of the weights for which they have been licensed.

Section 35-a of the Motor Vehicle Code, as amended, prohibits the operation of a motor vehicle, trailer, semi-trailer, or of the combination of vehicles "in excess of the gross weight on the basis of which it is registered and licensed," and prescribes a fine or jail sentence, or both, for a violation of the provision.[10]

Section 113-a of the Motor Vehicle Code, as amended in 1948, provides: "Upon final conviction of any person, firm or corporation for operating or causing to be operated over the highways of this State a motor vehicle or vehicles exceeding the maximum load limits as provided in this act, such person, firm or corporation shall, in addition to penalties provided for such convictions, pay or cause to be paid to the Division of Motor Vehicles for the benefit of the Literary Fund the sum of two dollars ($2.00) per hundred pounds or fraction thereof for each and every hundred pounds of weight in excess of the maximum weight provided in this act, * * *."

The section, as amended, further provides for the denial to the "offending person, firm or corporation" of the right to operate a motor vehicle or vehicles upon the highways of this State until the foregoing penalty provisions have been fully complied with.[11]

In addition to these penalties, Motor Vehicle Code, § 116, as amended,[12] provides for the weighing and unloading of a vehicle found to be operating at a weight greater than that for which it is licensed.

Whether these prescribed penalties are inadequate or too lenient to accomplish their purpose is a legislative and not a judicial matter. In any event, we have been pointed to no statute, nor have we been able to find any, which imposes upon one who operates, or causes to be operated, on the highways a vehicle carrying a load in excess of that for which it is licensed

[10] Acts 1948, ch. 492, pp. 987, 988; Code 1950, § 46-167.
[11] Acts 1948, ch. 510, pp. 1020, 1021; Code 1950, § 46-338.1.
See *Joyner v. Matthews, post,* p. 10, 68 S. E. (2d) 127.
[12] Acts 1942, ch. 430, p. 692; Code 1950, § 46-342.

an added penalty measured by an additional registration fee, such as is claimed here. Since tax laws are to be construed strictly against the government and in favor of the citizen, we cannot by implication write such a provision into the statutes. *Commonwealth* v. *Stringfellow*, 173 Va. 284, 291, 4 S. E. (2d) 357, 360.

After the Commonwealth had put on her evidence and rested, the defendants offered no evidence. During the discussion of the instructions, counsel for the defendants took the position that since the evidence failed to show that the vehicles operated by them were of a type which could have been licensed to operate at a gross weight in excess of 40,000 pounds, the Commonwealth had failed to make out a case for the collection of the additional registration fees. The lower court sustained this position of the defendants. Thereupon counsel for the Commonwealth asked leave to introduce certain additional evidence on the subject. The action of the lower court in overruling this motion is made the subject of an assignment of error.

There is no merit in this assignment. We need not stop to consider whether the refusal of the lower court to reopen the case and permit the introduction of additional testimony after the plaintiff had rested was an abuse of its sound judicial discretion, for the evidence which the attorney for the Commonwealth offered to introduce failed to show that any of the vehicles which Smith operated during the months of June, July, August and September, 1948, were of a type which could have been licensed to operate at a gross weight in excess of 40,000 pounds.

It is pointed out that Bauserman, an employee of the Motor Vehicle Division, would have testified that Smith told him, when applying for the registration of his vehicles, that he (Smith) had converted, or was about to convert, all of his vehicles so as to comply with the statute permitting them to operate at the greater gross weight. But this conversation, Bauserman said, took place the latter part of September. It did not show that the vehicles had in fact been converted at the time of the alleged illegal operations, fixed by the Commonwealth's evidence as having occurred in June, July, August, and the early part of September, 1948.

The Commonwealth also offered to prove that in his petition for a declaratory judgment, which was filed in November, 1948,

Smith alleged that all of the equipment owned and operated by him complied with the law entitling him to operate over designated highways at a gross weight not in excess of 50,000 pounds. But, again, this does not show that the particular vehicles had been converted at the time of the alleged illegal operations.

Hence, the evidence which the Commonwealth offered to introduce after the case had been closed did not sustain her contention and would not have warranted a verdict different from that which the jury rendered.

█ Error is assigned to the action of the trial court in striking the evidence as to Smith Transfer Corporation which was made a party defendant upon the theory that it had assumed the tax liability incurred by Smith individually. Under our view of the matter, since there is no liability on Smith for the Commonwealth's claim, there is none on the corporation.

There is no occasion to discuss the other questions raised in the briefs.

The judgment is

*Affirmed.*